[No. 27697. Department One. October 21, 1939.]

LINCOLN V. B. DRAPER, *Appellant,* v. THE AETNA LIFE INSURANCE COMPANY, *Respondent.*[1]

*L. B. Donley,* for appellant.

*Horace G. Geer,* for respondent.

[1]Reported in 95 P. (2d) 28.

SIMPSON, J.—In this case, action was instituted to recover disability payments upon a policy of life insurance which provided for monthly payments in the event of the permanent disability of the insured.

The complaint sets out the portions of the policy relative to the obligation of defendant to make monthly payments for permanent disability. Plaintiff then alleges that, May 10, 1931, he fell from a shaft in a sawmill and suffered severe, disabling injuries; that, March 9, 1933, he suffered an injury by being struck by a thrown baseball bat; and that, since May 10, 1931, he has been totally disabled by bodily injuries from engaging in any occupation for wage or profit.

He further alleges that, June 30, 1931, he made and presented to defendant company a proper claim for permanent total disability, but that defendant refused to pay sixty dollars per month provided for in the policy. Plaintiff also alleges that he has each year paid to defendant the semi-annual policy premiums of $113.28, for which he demands recovery in addition to the monthly payments.

The defendant answered, admitting the allegations concerning the issuance of the policy and the facts relative to the payment of premiums. The answer then alleged that proper proof of claim under the policy was not made to the defendant until March 11, 1938, and that at no time prior to that date, although often requested by defendant, was the defendant permitted to examine the insured before the acceptance of proof as provided in the policy.

Trial was had to the court, sitting without a jury. At the conclusion of the trial, findings of fact and conclusions of law were made in favor of defendant, and thereafter the court entered a judgment dismissing the action.

In presenting his appeal, appellant urges error on

the part of the trial court in denying to appellant compensation for total and permanent disability for any time prior to September 11, 1938, and in denying to appellant refund of premiums paid between January 11, 1932, and December 3, 1937.

The facts are these: May 12, 1921, respondent issued its insurance policy on the life of appellant in the sum of six thousand dollars. The provisions of the policy which are pertinent to the questions involved in this appeal are as follows:

"Six months after proof is received at the Home Office of the Company, that the insured has become wholly, continuously and permanently disabled and will for life be unable to perform any work or conduct any business for compensation or profit, or has met with the irrecoverable loss of the entire sight of both eyes, or the total and permanent loss by removal or disease of the use of both hands or of both feet, or of such loss of one hand and one foot, the Company will, if all premiums previously due have been paid, waive the payment of all premiums falling due thereafter during such disability, and if such disability was sustained before the insured attained the age of sixty years, the Company will pay to the life beneficiary the sum of ten dollars for each thousand dollars of the original insurance and will pay the same sum on the same day of every month thereafter during the lifetime and during such disability of the insured.

"Any premium waived or monthly payment made by the Company on account of permanent total disability as herein described will not be deducted from the sum insured at death or maturity, and the loan and cash surrender values will increase in the same way as if the premiums waived had been paid in cash.

"The foregoing benefits for disability are conditioned upon the Medical Examiner of the Company being permitted to examine the insured before the acceptance of proof."

Appellant suffered two injuries: One May 10, 1931, and the other June 9, 1933, the first of which caused

permanent disability to such an extent that he was unable to carry on any business activities.

June 12, 1931, appellant's wife wrote a letter to respondent's office at Seattle as follows:

"Under Police No. 272701—Lincoln V B Draper— there is a disability clause. Will you please forward papers to prove the claim. Mr. Draper was operated on May 13th—and is still in the hospital—and will be disabled for an indefinite time.

"Would appreciate any information you may have in regard to this insurance. Would prefer to hear direct from you as we have always delt with the Seattle office."

June 20, 1931, respondent's Tacoma office answered Mrs. Draper, and stated:

"We have your letter of June 12th forwarded to us by the Seattle Office and are accordingly enclosing a Preliminary Notice of Permanent Total Disability Form which you should complete fully and return to this office as soon as possible. We shall then be glad to give the matter our best attention."

June 30, 1931, Mrs. Draper mailed appellant's claim of disability, upon the form provided by the respondent company, to its Tacoma office. Her accompanying letter requested that respondent company advise her if further information were desired. The claim of disability was as follows:

"AETNA LIFE INSURANCE CO.
Hartford, Conn.

Life Disability Claim

1. Name of insured Lincoln B Draper Age 40 Policy Number N272,701
4. Residence of Insured 612 W 3rd Aberdeen, Wash.
5. Occupation when Total Disability (Exact Duties) Owner and Manager of Mill and Logging Supply Co.
6. Name of Employer

7. Cause of disability and details of illness or accident and symptoms present—Intestinal obstruction caused by adhesive band across lower ileum
8. Date of symptoms first became known May 13, 1931
9. Date total disability began May 13, 1931
10. Date last worked 5-13-31
11. Date first consulted a Physician May 13, 1930
12. Name and addresses of all physicians consulted and dates of attendance—H. C. Randolph, Aberdeen, Wash. May 13th Still under my care
13. Has insured suffered from any infirmity, disease or injury other than above mentioned. If so describe each case stating how long it existed and giving names and addresses of all physicians consulted. No.
14. Does total disability now exist? Yes.
15. Does doctor believe that the total disability will be permanent and that the insured will for life be unable to engage in any gainful occupation (if not how long does he believe that the total disability will exist) Indefinite

Dated May 13, 193o1 LINCOLN B DRAPER"

November 2, 1931, Mrs. Draper stated in another letter to the company:

"On November 12th there is a premium due on the above policy. Mr. Draper is still disabled and indefinately so. There is a premium waiver on this policy—also disability. Kindly advise if this will be taken care of."

Again, November 6, 1931, she wrote:

"In re policy No. 272,701—Lincoln V. B. Draper—beg to advise that upon further investigation we find that Premium Waiver and Disability on this policy should be in effect.

"Will you kindly have your adjust call on us at his earliest convenience—or forward blanks for medical examination—or whatever is necessary. When Mr. Draper was taken ill—in fact on June 12th I wrote

asking for Claim blanks—but evidently they were not forwarded.

"We would appreciate prompt action to be taken."

Mrs. Draper sent a letter to respondent, November 23, 1931, saying:

"As to the Premium Waiver—kindly advise me about the same without delay—as this was due Nov. 12th.

"We have asked for blanks firest on June 12th and twice later—may we have these without further delay?"

July 11, 1932, in response to written inquiry concerning appellant's address, Mrs. Draper wrote the respondent company as follows:

"In re your letter of June 20th, just received this date, beg to advise Mr. Draper was again operated on the 15th of June, here in this city by Dr. H. C. Randolph.

"He is at present at Lake Quinault convalescing. Any further communications—forward to our home address, No. 612 West 3rd Street, Aberdeen, Wash."

July 13, 1932, respondent notified Mrs. Draper as follows:

"This will acknowledge receipt of your letter of July 11 advising us concerning Mr. Draper's whereabouts.

"We have turned this over to our Clain Adjustor, Mr. M. F. Crumpacker, and it will have his further attention."

A letter of August 24, 1932, contained the following:

"The Home Office has requested an examination to determine your present condition, and we have accordingly arranged with Dr. I. R. Watkins for the examination.

"Will you please arrange to call at the Doctor's office at your early convenience."

October 4, 1932, another letter directed appellant to go to the office of Dr. Watkins for medical examination.

Similar requests of the same nature were made October 11 and October 17, 1932.

Mr. Crumpacker, representing respondent, called upon Mrs. Draper in the city of Aberdeen. Mrs. Draper testified that Mr. Crumpacker told her that the policy was a total and permanent disability policy,

" . . . and that to be totally and permanently disabled you had to be either paralyzed from your neck down or you had to be tubercular or you had to have a doctor's certificate saying from now on this man would be.permanently disabled. . . . He told me that is a permanent and total disability, and that is what permanent and total disability means."

Appellant urges that the provision of the policy referable to examination by the respondent's medical examiner is not a prerequisite to recovery; that, at the option of the insurer, such medical examination may be required before the acceptance of proof, if deemed advisable.

We have consistently held that proof of loss, as required by a policy of insurance, is a condition precedent to the maintenance of an action on a policy. In *Kuck v. Citizens' Ins. Co.*, 90 Wash. 35, 155 Pac. 406, we said:

"The rule is well settled in this state that the making of proof of loss as required by the policy is a condition precedent to the maintenance of an action, unless failure to present proofs is due to a misleading of the insured by the officers or agents of the insurance company."

This rule has been followed in the cases of *Walton v. American Central Ins. Co.*, 115 Wash. 103, 196 Pac. 588; *Ritzville Warehouse Co. v. Dorgan*, 128 Wash. 25, 221 Pac. 986; and *Merriman v. Maryland Casualty Co.*, 147 Wash. 579, 266 Pac. 682, 63 A. L. R. 1040.

Appellant places much reliance upon the case of *Pagni v. New York Life Ins. Co.*, 173 Wash. 322, 23 P.

(2d) 6, 93 A. L. R. 1325. In that case, the policy of insurance did not contain a provision which required a medical examination by the company's medical examiner, such as is included in this policy. It simply provided for due proof. Moreover, the company, in the cited case, had denied liability, which, in itself, waived the filing of proof of loss prior to the commencement of an action to recover upon the policy. The rule announced in the cited case is not applicable to the facts present in the instant case.

 Appellant contends that Mr. Crumpacker, the adjuster for respondent, made false and misleading statements to appellant's wife, and that appellant was thereby misled. This contention is grounded upon the statement made by Mr. Crumpacker relative to what constituted permanent disability to the effect that "disabled" means either paralysis from the neck down or tuberculosis. Appellant calls our attention to the case of *Storwick v. Reliance Life Ins. Co.*, 151 Wash. 153, 275 Pac. 550, in support of his contention.

It must be conceded that the first portion of the adjuster's statement was incorrect, in view of our holding in the cited case, in which we stated:

"It seems to us that one is totally disabled within the meaning of these policies, when he is so far disabled that he cannot, with any degree of success, within the range of his normal capabilities, earn wages or profit in some occupation or gainful pursuit."

If the statement made to Mrs. Draper had stopped with the information relative to what constituted disability, we would be inclined to agree with the argument of appellant. However, we find that the adjuster made the further statement:

". . . or you had to have a doctor's certificate saying from now on this man would be permanently disabled."

The portion of the adjuster's statement last quoted is in conformity with the provision of the policy providing that benefits for disability are "conditioned upon the Medical Examiner of the Company being permitted to examine the insured before the acceptance of proof."

While it is true that the statement was incorrect in one instance, it did inform appellant of the need for examination by respondent's doctor. We are unable to hold that appellant or his wife were misled by the adjuster's statement when we consider it in its entirety in conjunction with the various letters sent by the respondent company insisting upon an examination by the doctor selected by the company.

Appellant cites many cases as being determinative of the question here involved. An examination of those cases reveals factual situations entirely different from those present in the case at bar; they are not controlling.

It is next contended by appellant that complete proof of loss was presented July 1, 1931; or, conceding for the sake of argument that the preliminary proof was not full compliance with the policy, respondent, by its conduct, waived any further proof of appellant's disability.

This argument is founded upon the proposition that, by accepting the first notice of claim of disability, and by sending an adjuster to see appellant, respondent waived the medical examination required by the terms of the policy.

Appellant calls to our attention the statement in 33 C. J. 30, § 690, which states:

"Where the company, on receiving immediate informal notice of loss, sends an agent to investigate, it thereby waives the formal notice required by the policy. By entering into negotiations looking to an adjustment or settlement of the claim, the company

waives the requirements of the policy as to notice and proofs, where the negotiations are of such a character as to indicate that the company has no intention of insisting on those requirements, and as to mislead insured or claimant into the belief that compliance therewith is not necessary."

The rule relative to investigations of loss by an adjuster is stated as follows in *Kuck v. Citizens' Ins. Co., supra,* in which this court said:

"The fact that the adjuster investigated the loss a few days after it occurred, in the absence of McMullen, cannot be construed as a waiver of the express provision of the policy requiring proof of loss. It would seem that the purpose of this proof is to furnish a working basis upon which the loss can be adjusted."

Further, we note that, in the cited case, the agent, a few days after the investigation was made, informed the insured that the adjuster would adjust the loss.

The record in the case at bar does not disclose that the adjuster entered into any negotiation looking to an adjustment or settlement of the claim made by the appellant.

The cases of *Hatcher v. Sovereign Fire Assurance Co.,* 71 Wash. 79, 127 Pac. 588; *Boskovitch v. Union Assurance Society,* 98 Wash. 579, 168 Pac. 166; *Stebbins v. Westchester Fire Ins. Co.,* 115 Wash. 623, 197 Pac. 913; *Bowden v. General Ins. Co.,* 152 Wash. 199, 277 Pac. 443; and *Laucks v. Hartford Fire Ins. Co.,* 152 Wash. 241, 277 Pac. 834, have been cited by appellant in support of his contention that the medical examination was waived because of the fact that the adjuster for respondent visited appellant and his wife.

An examination of the cited cases discloses that, in each of them, the insured was told, in effect, after he had made informal proof of loss, that nothing more was required, and that the company had all the information necessary. No statement of like nature was made by

any agent of respondent company in this case. An examination of the letters written to appellant and his wife, and of the statements made by the adjuster, discloses repeated demands that appellant be examined by the company doctor, as required by the policy of insurance.

Appellant insists that the failure of the company to forward blanks on request constitutes a waiver of further proof of disability. Respondent did send the blanks necessary for the preliminary proof, and later notified appellant concerning the medical examination.

The record does not disclose that appellant neglected to submit to a medical examination because of respondent's delay in forwarding blanks for the use of appellant.

The reason appellant did not go to the company's medical examiner was that he and his wife did not believe him to be totally and permanently disabled.

This conclusion is borne out by the testimony of Mr. and Mrs. Draper. Mr. Draper stated he certainly hoped he was not totally and permanently disabled, and Mrs. Draper testified:

"We didn't believe he was permanently and totally disabled, and we hoped from spring to fall he would be able to go back and run his business."

We find no error on the part of the trial court, and therefore affirm the judgment.

BLAKE, C. J., MAIN, MILLARD, and ROBINSON, JJ.. concur.